# Exhibit A

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | |
|---|---|
| STEPHANIE BRIDGES, on behalf of herself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. _____<br>) |
| v. | )<br>) TI |
| THE COCA-COLA COMPANY | )<br>) |
| SERVE:<br>Registered Agent<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801 | ) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| ENERGY BRANDS, INC. d/b/a GLACEAU, | )<br>)<br>) |
| SERVE:<br>Registered Agent<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, Delaware 19801 | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## CLASS ACTION PETITION

Plaintiff Stephanie Bridges, on her own behalf and on behalf of all others similarly situated in the State of Missouri, for her Class Action Petition against Defendants The Coca-Cola Company and Energy Brands, Inc. d/b/a Glaceau (collectively, "Defendants"), states and alleges as follows:

## Nature of the Action

1. This lawsuit seeks relief individually and on behalf of a class of Missouri consumers for Defendants' unfair and deceptive conduct in marketing and branding "vitaminwater" as a "healthy" "water beverage" when, in fact, it is a liquid junk food that promotes obesity, diabetes, and other health problems. Defendants' campaign to brand vitaminwater as a healthy water beverage is harmful to consumers in Missouri and violates state and federal law.

2. Since at least 2008, Defendants have engaged in an extensive and long-term campaign to brand vitaminwater as a "nutrient enhanced water beverage" that promotes better health. Defendants describe vitaminwater as a "nutrient-packed, great-tasting water with added electrolytes" and a "great-tasting, healthy enhanced water that is packed with nutrients." Defendants market vitaminwater as "a perfect complement to everyone's less-than-perfect diet" because "it can provide a step towards better health by giving people an easy and convenient way to get more of the nutrients and hydration they need each day."

3. Defendants market vitaminwater as a "healthy" "water beverage" in order to increase sales, charge a premium price for the product, and capture market share from their competitors. Defendants' comprehensive and uniform marketing leads consumers to believe that vitaminwater is composed predominately of what is stated in the product name: vitamins and water. Defendants reinforce consumers' belief about the essential ingredients of vitaminwater by representing it as the "#1 bottled *water* in the [U]nited [S]tates," a "nutrient enhanced *water* beverage," and "great-tasting *water*."

Case 4:13-cv-00644-BCW   Document 1-2   Filed 06/28/13   Page 3 of 19

4. Contrary to Defendants' branding and marketing, vitaminwater is not composed predominately of just vitamins and water. Instead, the two primary ingredients of vitaminwater are sugar and water. With 33 grams of sugar per bottle, vitaminwater contains more sugar than a Hershey's Milk Chocolate Bar and is nearly identical in composition to every other soft drink that should be consumed sparingly.

5. Although vitaminwater contains some quantity of vitamins, the vitamin content is achieved through indiscriminate fortification of the product in violation of the fortification policy for food adopted by the United States Food and Drug Administration ("FDA"). Without fortification, Defendants' vitaminwater lacks sufficient nutritive qualities to be considered "healthy" and, therefore, is misbranded pursuant to FDA regulations.

6. Defendants falsely and deceptively market vitaminwater to exploit consumers' preference for healthy foods and their willingness to pay a price premium for foods which allow them to achieve a more healthful diet. Defendants took advantage of consumers' preferences by charging nearly twice as much for vitaminwater than the price for other readily available soft drinks.

7. Plaintiff Bridges was injured as a result of Defendants' wrongful conduct when she paid more for vitaminwater than she would have paid had Defendants not unfairly and deceptively marketed the product. Plaintiff Bridges would not have purchased Defendants' vitaminwater for a premium price had she known the true nature of the product.

8. Plaintiff Bridges is similarly situated to thousands of consumers throughout Missouri who paid a premium price for Defendants' vitaminwater but received a product that is substantially inferior to the product advertised by Defendants.

9. Plaintiff Bridges seeks relief individually and on behalf of a class of consumers who, from May 2008 to the present (the "Class Period"), purchased vitaminwater in the State of Missouri for personal, family, or household purposes. Plaintiff Bridges asserts claims for violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.*, and unjust enrichment and seeks relief in the form of damages, pre-judgment and post-judgment interest, restitution, reasonable attorneys' fees and litigation costs, and punitive damages in an amount that is fair and reasonable and will serve to deter Defendants from similar conduct in the future.

## The Parties

10. Plaintiff Stephanie Bridges is a citizen of the State of Missouri and resides in Kansas City, Missouri. Through 2008 and 2009, Plaintiff Bridges purchased vitaminwater on a regular basis, including at Costco and Target in Kansas City, Missouri, for personal, family, or household purposes. Plaintiff Bridges purchased multiple flavors, including the "xxx açai-blueberry-pomegranate," "power-c dragonfruit," and the "revive fruit punch" flavors. Plaintiff Bridges paid a price premium for vitaminwater under the belief that it was a healthier alternative to other readily available beverages. Plaintiff Bridges would not have purchased vitaminwater for a premium price had she known that, rather than a "healthy" "water beverage" she was purchasing a sugary soft drink that promotes obesity and diabetes.

11. Defendant The Coca-Cola Company ("Coca-Cola Co.") is a Delaware corporation with its principal place of business in Atlanta, Georgia. Coca-Cola Co. is the world's leading owner and marketer of nonalcoholic beverage brands and is the world's largest manufacturer, distributor, and marketer of concentrates and syrups used to produce nonalcoholic beverages.

12. Defendant Energy Brands, Inc. d/b/a Glaceau ("Glaceau") is a New York corporation with its principal place of business in Whitestone, New York. Glaceau is a wholly-owned subsidiary of Coca-Cola Co. and describes itself as "the leader of the enhanced water category." On information and belief, Defendant Glaceau manufactured, marketed, and sold vitaminwater nationwide.

13. Coca-Cola Co. acquired Defendant Glaceau in 2007 for $4.1 billion. On information and belief, Coca-Cola Co. exercises dominion and control over Glaceau and participates in the marketing and sale of vitaminwater, including the distribution and marketing of vitaminwater through its extensive distribution network.

## Jurisdiction and Venue

14. This Court has jurisdiction over Defendants pursuant to Missouri Rule of Civil Procedure 54.06 and Mo. Rev. Stat. § 506.500 because Defendants transacted business within the State of Missouri and committed the wrongdoing alleged by Plaintiff in the State of Missouri. Defendants are also subject to the Court's jurisdiction because they maintain substantial and continuous contacts with the State of Missouri and have purposefully availed themselves of the benefits and protections of the State of Missouri.

15. Venue is proper in this Court pursuant to Mo. Rev. Stat. § 508.010 because Plaintiff Bridges was first injured by the wrongful acts and conduct of Defendants in Jackson County, Missouri. Venue is also proper in this Court pursuant to Mo. Rev. Stat. § 407.025.1 because Plaintiff Bridges purchased vitaminwater in Jackson County, Missouri.

Case 4:13-cv-00644-BCW   Document 1-2   Filed 06/28/13   Page 6 of 19

## Factual Allegations

16. Defendants are the manufacturers, importers, marketers, and sellers of vitaminwater brand products in Missouri and throughout the nation. Defendants sell multiple flavors of vitaminwater, with names such as "power-c," "defense," "focus," "essential," "energy," "coco-refresh," "squeezed," "formula 50," "revive," and "xxx."

17. Defendants market vitaminwater as a "healthy" "enhanced water beverage" in an attempt to capture the increasingly profitable market for healthy beverages in the United States. The same year Coca-Cola Co. expanded its product line by acquiring Glaceau, it recognized the growing demand for healthy beverages as a material risk to its business because "[c]onsumers, public health officials and government officials are becoming increasingly aware and concerned about the public health consequences associated with obesity . . . some researchers, health advocates and dietary guidelines are encouraging consumers to reduce consumption of certain types of beverages, especially sugar-sweetened beverages." Coca-Cola Co., Annual Report (Form 10-K), at 12 (February 28, 2008).

18. As shown in Coca-Cola Co.'s annual report, Defendants realized the growing demand for healthy beverages and the growing aversion to sugar-sweetened beverages.

**A.   Defendants Market Vitaminwater as a "Water Beverage" That Is "Healthy."**

19. Since at least 2008, Defendants have engaged in an extensive and long-term marketing campaign to brand vitaminwater as a "nutrient enhanced water beverage" that is a healthier option than other beverages.

Case 4:13-cv-00644-BCW   Document 1-2   Filed 06/28/13   Page 7 of 19

20. The labeling on every bottle of vitaminwater – a brand name which itself implies that the product is composed predominately of vitamins and water – represents the product as a "nutrient enhanced water beverage."

21. Many packages of vitaminwater expressly state that "vitamins + water = all you need."

22. Defendants make additional claims on vitaminwater labeling regarding the product's purported health benefits:

   (a) The labeling for the "defense" flavor states: "if you've had to use sick days because you've actually been sick then you're seriously missing out, my friends. see, the trick is to stay healthy and use sick days to just um, not go in. and this combination of zinc and fortifying vitamins can help out with that and keep you healthy as a horse. so drink up."

   (b) The labeling for the "b-relaxed" flavor states: "[b-relaxed] is specially formulated with b vitamins and theanine. The b vitamins are there to replace those lost during times of stress (physical or mental). Theanine is an amino acid naturally found in tea leaves and has been shown to promote feelings of relaxation. This combination can help bring about a healthy state of physical and mental being."

   (c) The labeling for the "focus" flavor states: "[focus] is specially formulated to provide vitamin a (a nutrient known to be required for visual function), antioxidants and other nutrients [that] scientific evidence suggests may reduce the risk of age-related eye disease."

23.  As shown in Exhibit A attached hereto, Defendants further supplement and explain the characteristics and nutritional qualities of vitaminwater on Defendant Glaceau's website at www.glaceau.com. For example, Glaceau states on its website:

> **what is vitaminwater?**
>
> **+ answer:**
> while most beverages are just about flavor and refreshment, vitaminwater® (#1 bottled water in the united states) is about much more ... simply put, it works! for more responsible hydration. vitaminwater is a nutrient-packed, great-tasting water with added electrolytes. it can provide a step towards better health by giving people an easy and convenient way to get more of the nutrients and hydration they need each day.

> vitaminwater is a great-tasting, healthy enhanced water that is packed with nutrients. in addition to providing a perfect complement to everyone's less-than-perfect diet, each vitaminwater variety has a unique combination of nutrients to deliver a specific benefit to get you through your day. a recently-completed clinical study proved what we have known all along: the vitamins in vitaminwater power-c (dragonfruit) are absorbed by the body equally as well as those in traditional foods.

> glacéau products are specially formulated to help people on the go feel better, perform better and live healthier lives through better hydration. as such, we are proud to partner with athletes, artists, actors and other individuals who embody the ideal of good health and wellness and who genuinely incorporate glacéau products into their healthy lifestyles.

24.  Defendant Glaceau's website describes the vitamin content, caffeine content, available sizes, and sources of ingredients for vitaminwater and encourages consumers to "get some" by entering their address to find the nearest retail store. *See* Exhibit A.

-8-

25. As a result of Defendants' extensive and long-term marketing campaign, vitaminwater is inextricably linked in the minds of consumers as a "water beverage" that is "healthy."

**B. Defendants' Marketing of Vitaminwater as a "Water Beverage" is Unfair, Unlawful, and Deceptive.**

26. Defendants have engaged in a long-term and extensive campaign to market vitaminwater as a "water beverage," including describing the product as a "nutrient enhanced *water* beverage," the "#1 *bottled water* in the [U]nited [S]tates," and "great-tasting *water*."

27. Defendants' long-term and extensive marketing campaign to brand vitaminwater as a "nutrient enhanced water beverage" is unfair, unlawful, and deceptive.

28. Defendant's uniform emphasis on the vitamin and water content of vitaminwater deceives consumers into thinking that vitaminwater is composed primarily of the ingredients identified by its name: vitamins and water.

29. Contrary to Defendants' branding and marketing, vitaminwater is not composed primarily of only vitamins and water. A primary ingredient of vitaminwater is sugar. Each bottle of vitaminwater contains 33 grams of sugar, which is more sugar than an entire Hershey's Milk Chocolate Bar.

30. The deceptive nature of calling a product "vitaminwater" when it contains large amounts of sugar is recognized by binding FDA regulations:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. 101.18(b).

31. It is an unfair and deceptive practice to characterize a product as "vitaminwater" and a "water beverage" when the product is in fact a sugar-sweetened soft drink that is nearly identical to every other soft drink that should be consumed sparingly.

C. **Defendants Marketing of Vitaminwater as "Healthy" is Unfair, Unlawful, and Deceptive.**

32. Defendants have engaged in a long-term and extensive campaign to market vitaminwater as a "healthy" water beverage that "can provide a step towards better health by giving people an easy and convenient way to get more of the nutrients and hydration they need each day."

33. Defendants' marketing and branding of vitaminwater as a "healthy" beverage that can be used to achieve a healthful diet constitutes an unfair, unlawful, and deceptive practice.

34. The use of the term "healthy" to describe a food product, which is defined to include beverages such as vitaminwater, is governed by FDA regulations. Under 21 C.F.R. § 101.65(d), a food company "may use the term 'healthy' . . . as an implied nutrient content claim on the label or in labeling of a food" only if the food meets certain conditions for fat, saturated fat, cholesterol, and nutrients, among other requirements. 21 C.F.R. § 101.65(d)(2)(i).

35. A food meets the required conditions for nutrient content if it contains "[a]t least 10 percent of the [Reference Daily Intake ("RDI")] or [Daily Reference Value ("DRV")] per [Reference Amount Customarily Consumed ("RACC")] of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber." 21 C.F.R. § 101.65(d)(2)(i).

36. Vitaminwater satisfies the required conditions for nutrient content only through fortification. Without fortification, vitaminwater is devoid of any meaningful amounts of nutrients.

37. A food product may satisfy the required conditions for nutrient content through fortification only if such fortification complies with the FDA's fortification policy for food in 21 C.F.R. § 104.20. *See* 21 C.F.R. § 101.65(d)(2)(iv).

38. Defendants' fortification of vitaminwater to satisfy the required conditions for nutrient content violates the FDA's fortification policy for food, which prohibits the fortification of junk foods, such as soft drinks, for the purpose of making a "healthy" claim about the product. *See* 21 C.F.R. § 104.20. As explained by the FDA:

> Fortification of a food of little or no nutritional value for the sole purpose of qualifying that food for a health claim is misleading for several reasons. There is great potential to confuse consumers if foods like sugars, soft drinks, and sweet desserts are fortified to qualify for a health claim when, at the same time, dietary guidance as contained in the USDA's Food Guide Pyramid (Ref. 29), for example, states that "[T]hese foods provide calories and little else nutritionally. Most people should use them sparingly." Indiscriminate fortification of such foods with one nutrient would not make such foods consistent with dietary guidelines.

Final Rule, *Food Labeling: General Requirements for Health Claims for Food*, 58 Fed. Reg. 2478, 2522 (Jan. 6, 1993).

39. The FDA's fortification policy was developed to prevent food producers from encouraging the consumption of junk food and recognizes that "random fortification of foods could result in over- or underfortification in consumer diets and create nutrient imbalances in the food supply." *See* 21 C.F.R. § 104.20.

40. Defendants' vitaminwater is misbranded pursuant to FDA regulations because it is a sugary soft drink with little or no nutritional value that only satisfies the required conditions for nutrient content through the indiscriminate fortification with vitamins.

41. Defendants' marketing and branding of vitaminwater as "healthy" is deceptive and unfair because it mischaracterizes the nature of the product and encourages the consumption of junk food in lieu of other, truly healthier options.

**D.     Plaintiff Bridges and Members of the Class Suffered a Loss as a Result of Defendants' Unfair, Unlawful, and Deceptive Conduct.**

42. Defendants chose to market vitaminwater falsely and deceptively because they knew that consumers will pay more for a healthier "water beverage" than they would for a sugar-sweetened soft drink that promotes obesity, diabetes, and other health problems.

43. Defendants' conduct in misleading consumers to believe that vitaminwater is a "healthy" "water beverage" unfairly permits Defendants to increase their sales, charge a premium price for their product, and capture market share from their competitors.

44. Defendants exploited consumers' willingness to pay a premium price for a healthy water beverage by charging a considerably higher price for vitaminwater than other sugar-sweetened soft drinks.

45. Defendants charge nearly twice as much for vitaminwater than the price for other sugar-sweetened soft drinks.

46. Plaintiff Bridges and members of the Class were injured as a result of Defendants' false and deceptive marketing because they paid more for vitaminwater than they would have had Defendants openly and honestly marketed the product.

47. Defendants have profited greatly at the expense of Plaintiff Bridges and the members of the Class. The nationwide gross sales of vitaminwater during the Class Period are estimated at more than half a billion dollars annually.

## Class Action Allegations

48. Plaintiff Bridges bring this class action pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure on behalf of the following statewide class of consumers (the "Class"):

> All purchasers of "vitaminwater" beverages for personal, family, or household purposes in the State of Missouri during the Class Period. Excluded from the Class are Defendants; subsidiaries and affiliates of Defendants; directors and officers of Defendants and members of their immediate families; federal, state, and local governmental entities; any judicial officers presiding over this action and their immediate family and judicial staff; any juror assigned to this action; and all consumers, if any, who have received a full refund from Defendants for their purchase of vitaminwater based on the claims alleged herein.

49. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, thousands of individuals purchased vitaminwater in Missouri.

50. Common questions of law and fact exist as to all Class members, including:

(a) whether Defendants' marketing and labeling of vitaminwater was false, misleading, deceptive, or unfair;

(b) whether Defendants misrepresented or failed to disclose material facts to the Plaintiff and members of the Class regarding vitaminwater;

(c) whether Defendants engaged in a pattern and practice of deceiving and defrauding the class with respect to the true nature of vitaminwater and other unlawful business practices regarding the sale and marketing of vitaminwater;

(d) whether Defendants were unjustly enriched by their conduct;

(e) whether Defendants' aforementioned conduct violated and continues to violate the MMPA;

(f) whether Plaintiff Bridges and members of the Class are entitled to restitution, monetary relief, or punitive damages, and if so, the amount and nature of such relief; and

(g) whether Plaintiff Bridges and members of the Class are entitled to an award of reasonable attorneys' fees, pre-judgment and post-judgment interest, and costs of suit.

51. Plaintiff Bridges' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' unlawful conduct. Plaintiff Bridges has no interests that are antagonistic to the interests of the other members of the Class. Plaintiff Bridges and all members of the Class have sustained economic injury arising out of the unlawful conduct for which Defendants are liable.

52. Plaintiff Bridges is a fair and adequate representative of the Class because her interests do not conflict with the interests of the Class members whom she seeks to represent, she has retained counsel competent and experienced in such matters, and she intends to prosecute this action vigorously on behalf of absent members of the Class. Plaintiff Bridges and her counsel will fairly and adequately protect the interests of members of the Class.

53. Defendants have acted or refused to act on grounds generally applicable to all members of the Class. Defendants have consistently and uniformly misrepresented the nature of vitaminwater to Plaintiff Bridges and members of the Class throughout the Class Period. Accordingly, final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

-14-

Case 4:13-cv-00644-BCW   Document 1-2   Filed 06/28/13   Page 15 of 19

54. Common questions of law and fact predominate over questions affecting only individual members of the Class. The class mechanism is also superior to any other available means for the fair and efficient adjudication of the claims asserted by Plaintiff Bridges and members of the Class. Individualized proceedings would result in increased delay and expense for all parties, would create an unnecessary burden on the judicial system, and would frustrate the claims of many individual class members who would be unable to incur individually the burden and expense necessary to establish liability against Defendants.

55. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the classes that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

### Count I

### Violation of the Missouri Merchandising Practices Act

56. Plaintiff Bridges incorporates by reference the allegations in all paragraphs of this Class Action Petition as though fully set forth in this paragraph.

57. Plaintiff Bridges brings this claim individually and on behalf of the members of the Class under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.*

58. Throughout the Class Period, Defendants represented that vitaminwater is a "healthy," "nutrient enhanced water beverage" that "can provide a step towards better health by

-15-

giving people an easy and convenient way to get more of the nutrients and hydration they need each day," among other representations.

59. Defendant's falsities, misrepresentations, concealment, and failure to disclose the true nature of vitaminwater constitutes a "deception, fraud . . . false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact," in violation of the MMPA. *See* Mo. Rev. Stat. § 407.020.

60. Defendant's conduct constitutes an "unfair practice" under the MMPA because: (a) it is unethical, oppressive or unscrupulous; (b) causes substantial injury to consumers; (c) violates Defendant's duty of good faith by soliciting Missouri consumers in a dishonest manner without observing reasonable commercial standards of fair dealing; (d) is unconscionable; and (e) violates federal law intended to protect the public. *See* 15 C.S.R. § 60-8.

61. As a result of Defendant's wrongful conduct, Plaintiff Bridges and members of the Class suffered an ascertainable loss by paying more for vitaminwater than they would have had Defendants not engaged in a deception, fraud, false promise, misrepresentation, and unfair practice and had Defendants not concealed, suppressed, or omitted material facts concerning the product despite having a duty to disclose such information.

WHEREFORE, Plaintiff Bridges prays for judgment against Defendants The Coca-Cola Company and Energy Brands, Inc. and in favor of Plaintiff and members of the Class for actual damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and costs of suit, punitive damages in an amount that is fair and reasonable, and such other and further relief as this Court deems just and proper.

Case 4:13-cv-00644-BCW   Document 1-2   Filed 06/28/13   Page 17 of 19

## Count II

### Unjust Enrichment

62. Plaintiff Bridges incorporates by reference the allegations in all paragraphs of this Class Action Petition as though fully set forth in this paragraph.

63. Plaintiff Bridges brings this claim individually and on behalf of the members of the Class.

64. Defendants received a monetary benefit at the expense of Plaintiff Bridges and members of the Class when Plaintiff and members of the Class purchased Defendants' falsely labeled and misbranded vitaminwater.

65. Defendants' enrichment is unjust and inequitable under the circumstances because it was obtained through their wrongful conduct in falsely and deceptively marketing vitaminwater as a "healthy," "nutrient enhanced water beverage" that "can provide a step towards better health by giving people an easy and convenient way to get more of the nutrients and hydration they need each day," among other representations.

66. Because Defendants were unjustly enriched at the expense of Plaintiff Bridges and members of the Class, Defendants must pay restitution to Plaintiff Bridges and members of the Class in an amount of their unjust enrichment.

WHEREFORE, Plaintiff Bridges prays for judgment against Defendants The Coca-Cola Company and Energy Brands, Inc. and in favor of Plaintiff and members of the Class for restitution, injunctive relief, and such other and further relief as this Court deems just and proper.

Case 4:13-cv-00644-BCW   Document 1-2   Filed 06/28/13   Page 18 of 19

## Prayer for Relief

Plaintiff Bridges prays for judgment against Defendants The Coca-Cola Company and Energy Brands, Inc. and in favor of Plaintiff and members of the Class for actual damages, restitution, pre-judgment and post-judgment interest, reasonable attorneys' fees and costs of suit, punitive damages in an amount that is fair and reasonable, and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Bridges hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

SHANK & HAMILTON, P.C.

By: *s/ Christopher S. Shank*
Christopher S. Shank, MO Bar #28760
David L. Heinemann, MO Bar #37622
2345 Grand Blvd., Suite 1600
Kansas City, Missouri 64108
Telephone: 816.471.0909
Facsimile: 816.471.3888
chriss@shankhamilton.com
davidh@shankhamilton.com

*Attorneys for Plaintiff Stephanie Bridges*